1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHRISTOPHER LEWIS,

11            Petitioner,              No. CIV S-09-0473 MCE DAD P

12        vs.

13   J. W. HAVILAND, Warden,

14            Respondent.            FINDINGS & RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the decision of the California Board

18   of Parole Hearings (hereinafter "Board") to deny him parole for three years at his fourth parole

19   consideration hearing held on April 11, 2007.  Upon careful consideration of the record and the

20   applicable law, the undersigned will recommend that petitioner's application for habeas corpus

21   relief be denied.

22                     PROCEDURAL BACKGROUND

23            Petitioner is confined pursuant to a judgment of conviction entered in the Los

24   Angeles County Superior Court on October 9, 1987, following his conviction on charges of

25   /////

26   /////

1

1    second degree murder with the use of a weapon.  (Pet. at l.)[1]  Pursuant to that conviction

2    petitioner was sentenced to seventeen years to life in state prison.  (Id.)

3              Petitioner's fourth parole consideration hearing, which is placed at issue by the

4    instant petition, was held on April 11, 2007.  (Id. at 65.)  At the time of the hearing, petitioner

5    had served nineteen years in prison.  (Id. at 67.)  Petitioner's minimum eligible parole date was

6    March 5, 1999.  (Id.)  At his 2007 hearing the Board panel found petitioner not suitable for parole

7    and denied parole for three years.  (Id. at 162.)

8              On November 30, 2007, petitioner filed a petition for writ of habeas corpus in the

9    Los Angeles County Superior Court, alleging that the Board's 2007 decision finding him

10   unsuitable for parole violated his right to due process because it was not supported by sufficient

11   evidence.  (Answer, Ex. 2.)  That court denied the petition in a reasoned decision on the merits.

12   (Answer, Ex. 3.)

13             Petitioner subsequently challenged the Board's 2007 decision in petitions for a

14   writ of habeas corpus filed in the California Court of Appeal and the California Supreme Court.

15   (Answer, Exs. 4, 6.)  Those petitions were summarily denied.  (Answer, Exs. 5, 7.)

16                              FACTUAL BACKGROUND

17             The Board described the facts of petitioner's commitment offense at the April 11,

18   2007 parole suitability hearing as follows:

19             On November 14th, 1986, at approximately 2:30 p.m., the victim
             was shot to death by Lewis with a 45 automatic.  Prior to the
20           shooting, a fistfight occurred between Lewis' gang and the victim's
             gang.
21
             Lewis' involvement in the fight is unclear.  However, it is
22           documented that he approached the victim and shot him in the
             chest.  No weapons were observed except Lewis' 45 automatic, in
23           which eight casings were recovered.

24   /////

25   _____

26      [1] Page number citations such as this one are to the page number reflected on the court's
     CM/ECF system and not to page numbers assigned by the parties.

1

2

> Lewis was later arrested in Louisiana and admitted to the murder.  I
> would note that Mr. Lewis was 20 at the time, and the victim was
> 15 years old.

3    (Pet. at 73-74.)  At the 2007 parole suitability hearing, petitioner explained his involvement as

4    follows.  While he was waiting for a bus he was approached and questioned by four or five rival

5    gang members.  (Id. at 76-77.)  He left, got a weapon, and returned to the bus stop.  (Id. at 77-78.)

6    Several fights broke out among rival gang members.  (Id. at 79.)  After "shots rang out,"

7    petitioner fired several shots at four or five people running towards him, killing the victim.  (Id.

8    at 74, 79, 82-83.)  Petitioner said he fired the gun in order to scare off the rival gang members

9    and to defend himself and did not direct his shots toward any particular individual.  (Id. at 83-

10   84.)

11                                              ANALYSIS

12   I.  Standards of Review Applicable to Habeas Corpus Claims

13            A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

14   some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

15   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

16   Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

17   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

18   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

19   corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

20   (1972).

21            This action is governed by the Antiterrorism and Effective Death Penalty Act of

22   1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

23   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

24   habeas corpus relief:

25            An application for a writ of habeas corpus on behalf of a
              person in custody pursuant to the judgment of a State court shall
26            not be granted with respect to any claim that was adjudicated on

the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). See also Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005) ("When more than one state court has adjudicated a claim, we analyze the last reasoned decision"). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not

1   apply and a federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052,

2   1056 (9th Cir. 2003).

3   II.  Petitioner's Claim

4         A.  Description of Claim

5         Petitioner claims that the 2007 Board decision violated his right to due process

6   because the reasons cited by the Board in finding him unsuitable for release on parole "were not

7   supported by any evidence in the record."  (Pet. at 14, 19, 24.)  He also argues that there was no

8   "rational link or nexus" between the Board's decision that he then posed a current danger to

9   society if released and the evidence relied on by the Board to find him unsuitable for parole.  (Id.)

10        B.  Applicable Legal Standards

11           1.  Due Process in the California Parole Context

12        The Due Process Clause of the Fourteenth Amendment prohibits state action that

13  deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

14  due process violation must first demonstrate that he was deprived of a liberty or property interest

15  protected by the Due Process Clause and then show that the procedures attendant upon the

16  deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

17  490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).[2]

18        A protected liberty interest may arise from either the Due Process Clause of the

19  United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

20  expectation or interest created by state laws or policies."  Wilkinson v. Austin,  545 U.S. 209,

21

22        [2]  In the context of parole proceedings, the "full panoply of rights" afforded to criminal

23  defendants is not "constitutionally mandated" under the federal Due Process Clause.  Jancsek v.
    Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and citation

24  omitted).  The United States Supreme Court has held that due process is satisfied in the context
    of a hearing to set a parole date where a prisoner is afforded notice of the hearing, an opportunity

25  to be heard and, if parole is denied, a statement of the reasons for the denial.  Hayward v.
    Marshall, 603 F.3d 546, 560 (9th Cir. 2010) (en banc) (quoting Greenholtz, 442 U.S. at 16).  See

26  also Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in
    cases involving parole issues).

1    221 (2005) (citations omitted).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

2    The United States Constitution does not, of its own force, create a protected liberty interest in a

3    parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981);

4    Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or

5    inherent right of a convicted person to be conditionally released before the expiration of a valid

6    sentence."); see also Hayward v. Marshall, 603 F.3d 546, 561 (9th Cir. 2010) ("[I]n the absence

7    of state law establishing otherwise, there is no federal constitutional requirement that parole be

8    granted in the absence of 'some evidence' of future dangerousness or anything else.") (en banc).

9    However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that

10   parole release will be granted' when or unless certain designated findings are made, and thereby

11   gives rise to a constitutional liberty interest."  McQuillion, 306 F.3d at 901 (quoting Greenholtz,

12   442 U.S. at 12).  See also Allen, 482 U.S. at 376-78; Pearson v. Muntz, 606 F.3d 606, 609 (9th

13   Cir. 2010) ("The principle that state law gives rise to liberty interests that may be enforced as a

14   matter of federal law is long established."); Hayward, 603 F.3d 562-63 ("Although the Due

15   Process Clause does not, by itself, entitle a prisoner to parole in the absence of some evidence of

16   future dangerousness, state law may supply a predicate for that conclusion.")

17            In California, a prisoner is entitled to release on parole unless there is "some

18   evidence" of his or her current dangerousness.  Hayward, 603 F.3d at 562 (citing In re Lawrence,

19   44 Cal.4th 1181, 1205-06, 1210 (2008) and In re Shaputis, 44 Cal. 4th 1241 (2008)); Cooke v.

20   Solis, 606 F.3d 1206, 1213 (9th Cir. 2010), pet. for cert. filed (Sept. 2, 2010) (No. 10-333); Pirtle

21   v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th Cir. 2010) ; In re Rosenkrantz, 29

22   Cal.4th 616, 651-53 (2002).   Therefore, "California's parole scheme gives rise to a cognizable

23   liberty interest in release on parole."  Pirtle, 611 F.3d at 1020 (quoting McQuillion, 306 F.3d at

24   902).  This liberty interest is enforceable under the federal Due Process Clause pursuant to

25   clearly established federal law.  Haggard v. Curry, 623 F.3d 1035, 1040-41 (9th Cir. 2010);

26   Cooke, 606 F.3d at 1213 (denial of parole to a California prisoner "in the absence of 'some

1  evidence' of current dangerousness . . . violat[es] . . . his federal right to due process."); Pearson,

2  606 F.3d at 609 (a state parole system that gives rise to a liberty interest in parole release is

3  enforceable under the federal Due Process Clause); Hayward, 603 F.3d at 563; see also Castelan

4  v. Campbell, No. 2:06-cv-01906-MMM, 2010 WL 3834838, at * 2 (E.D. Cal. Sept. 30, 2010)

5  (McKeown, J.) ("In other words, in requiring [federal] habeas courts to review parole denials for

6  compliance with California's 'some evidence' rule, Hayward holds that California state

7  constitutional law creates a cognizable interest in parole absent 'some evidence' of

8  dangerousness, and that the federal Due Process Clause in turn incorporates that right as a matter

9  of clearly established federal law.")

10           2.  California's Statutes and Regulations on Parole

11           When a federal court assesses whether a state parole board's suitability

12  determination was supported by "some evidence" in a habeas case, that analysis "is shaped by the

13  state regulatory, statutory, and constitutional law that governs parole suitability determinations in

14  California."  Pirtle, 611 F.3d at 1020 (citing Hayward, 603 F.3d at 561-62).   The setting of a

15  parole date for a California state prisoner is conditioned on a finding of suitability.  Cal. Penal

16  Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The state regulation that governs parole

17  suitability findings for life prisoners states as follows with regard to the statutory requirement of

18  California Penal Code § 3041(b):  "Regardless of the length of time served, a life prisoner shall

19  be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose

20  an unreasonable risk of danger to society if released from prison."  Cal. Code Regs. tit. 15, §

21  2281(a).  In California, the overriding concern in determining parole suitability is public safety.

22  In re Dannenberg, 34 Cal. 4th 1061, 1086 (2005).  This "core determination of 'public safety' . . .

23  involves an assessment of an inmates *current* dangerousness."  In re Lawrence, 44  Cal. 4th at

24  1205 (emphasis in original).  Accordingly,

25           when a court reviews a decision of the Board or the Governor, the
             relevant inquiry is whether some evidence supports the decision of
26           the Board or the Governor that the inmate constitutes a current

7

> threat to public safety, and not merely whether some evidence
> confirms the existence of certain factual findings.

Id. at 1212 (citing In re Rosenkrantz, 29 Cal. 4th at 658; In re Dannenberg, 34 Cal. 4th at 1071; and In re Lee, 143 Cal. App.4th 1400, 1408 (2006)).  "In short, 'some evidence' of future dangerousness is indeed a state *sine qua non* for denial of parole in California."  Pirtle, 611 F.3d at 1021 (quoting Hayward, 603 F.3d at 562).  See also Cooke, 606 F.3d at 1214.[3]

Under California law, prisoners serving indeterminate prison sentences "may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement."  In re Dannenberg, 34 Cal. 4th at 1078.  The Board normally sets a parole release date one year prior to the inmate's minimum eligible parole release date, and does so "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public."  In re Lawrence, 44 Cal. 4th at 1202 (citing Cal. Penal Code § 3041(a)).  A release date must be set "unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ."  Cal. Penal Code § 3041(b).  In determining whether an inmate is suitable for parole, the Board must consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present
> mental state; past criminal history, including involvement in other

---

[3]  As the Ninth Circuit has explained, the "some evidence"

> requirement imposes substantive rather than purely procedural
> constraints on state officials' discretion to grant or deny parole: "a
> reviewing court . . . is not bound to affirm a parole decision merely
> because the Board or the Governor has adhered to all procedural
> safeguards."  In re Lawrence, 44 Cal.4th [at 1210].   Rather the
> court must ensure that the decision to deny parole is "supported by
> some evidence, not merely by a hunch or intuition."  Id. [at 1212].

Cooke, 606 F.3d at 1213-14.

1  criminal misconduct which is reliably documented; the base and
   other commitment offenses, including behavior before, during and
2  after the crime; past and present attitude toward the crime; any
   conditions of treatment or control, including the use of special
3  conditions under which the prisoner may safely be released to the
   community; and any other information which bears on the
4  prisoner's suitability for release.

5  Cal. Code Regs., tit. 15, § 2281(b).  However, "there must be more than the crime or its

6  circumstances alone to justify the Board's or the Governor's finding of current dangerousness."

7  Cooke, 606 F.3d at 1214.  See also Lawrence, 44 Cal. 4th at 1211 ("But the statutory and

8  regulatory mandate to normally grant parole to life prisoners who have committed murder means

9  that, particularly after these prisoners have served their suggested base terms, the underlying

10  circumstances of the commitment offense alone rarely will provide a valid basis for denying

11  parole when there is strong evidence of rehabilitation and no other evidence of current

12  dangerousness.")

13        The regulation identifies circumstances that tend to show suitability or

14  unsuitability for release.  Cal. Code Regs., tit. 15, § 2281(c) & (d).  The following circumstances

15  are identified as tending to show that a prisoner is suitable for release:  the prisoner has no

16  juvenile record of assaulting others or committing crimes with a potential of personal harm to

17  victims; the prisoner has experienced reasonably stable relationships with others; the prisoner has

18  performed acts that tend to indicate the presence of remorse or has given indications that he

19  understands the nature and magnitude of his offense; the prisoner committed his crime as the

20  result of significant stress in his life; the prisoner's criminal behavior resulted from having been

21  victimized by battered women syndrome; the prisoner lacks a significant history of violent crime;

22  the prisoner's present age reduces the probability of recidivism; the prisoner has made realistic

23  plans for release or has developed marketable skills that can be put to use upon release;

24  institutional activities indicate an enhanced ability to function within the law upon release.  Id., §

25  2281(d).

26  /////

9

1      The following circumstances are identified as tending to indicate unsuitability for

2   release:  the prisoner committed the offense in an especially heinous, atrocious, or cruel manner;

3   the prisoner had a previous record of violence; the prisoner has an unstable social history; the

4   prisoner's crime was a sadistic sexual offense; the prisoner had a lengthy history of severe mental

5   problems related to the offense; the prisoner has engaged in serious misconduct in prison.  Id., §

6   2281(c).  Factors to consider in deciding whether the prisoner's offense was committed in an

7   especially heinous, atrocious, or cruel manner include:  multiple victims were attacked, injured,

8   or killed in the same or separate incidents; the offense was carried out in a dispassionate and

9   calculated manner, such as an execution-style murder; the victim was abused, defiled or

10   mutilated during or after the offense; the offense was carried out in a manner that demonstrated

11   an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable

12   or very trivial in relation to the offense.  Id., § 2281(c)(1)(A) - (E).

13      In the end, under state law as clarified by the California Supreme Court,

14   the determination whether an inmate poses a current danger is not
dependent upon whether his or her commitment offense is more or
15   less egregious than other, similar crimes.  (*Dannenberg, supra*, 34
Cal. 4th at pp 1083-84 [parallel citations omitted].)  Nor is it
16   dependent solely upon whether the circumstances of the offense
exhibit viciousness above the minimum elements required for
17   conviction of that offense.  Rather, the relevant inquiry is whether
the circumstances of the commitment offense, when considered in
18   light of other facts in the record, are such that they continue to be
predictive of current dangerousness many years after commission
19   of the offense.  This inquiry is, by necessity and by statutory
mandate, an individualized one, and cannot be undertaken simply
20   by examining the circumstances of the crime in isolation, without
consideration of the passage of time or the attendant changes in the
21   inmate's psychological or mental attitude. [citations omitted].

22   In re Lawrence, 44 Cal. 4th at 1221.  See also In re Shaputis, 44 Cal. 4th at 154-55.

23      In this federal habeas action challenging the denial of release on parole it is the

24   court's task to determine "whether the California judicial decision approving the governor's [or

25   the Board's] decision rejecting parole was an 'unreasonable application' of the California 'some

26   evidence' requirement, or was 'based on an unreasonable determination of the facts in light of

10

the evidence.'"  <u>Hayward</u>, 603 F.3d at 563.  <u>See</u> <u>also</u> <u>Pearson</u>, 606 F.3d at 609 ("<u>Hayward</u>

specifically commands federal courts to examine the reasonableness of the state court's

determination of facts in light of the evidence."); <u>Cooke</u>, 606 F.3d at 1213; <u>McCullough v. Kane</u>,

___F.3d___, 2010 WL 5263140, at *4 (9th Cir. Dec. 27, 2010).   Accordingly, below the court

considers whether the Board's decision to deny petitioner parole in this case constituted an

unreasonable application of the "some evidence" rule.

   C.  <u>The Board's Decision</u>

        In addressing the factors it considered in reaching its 2007 decision that petitioner

was unsuitable for parole, the Board in this case stated as follows:

> PRESIDING COMMISSIONER SHELTON:  Okay.  We are back
> everyone, for the third Subsequent Parole Consideration hearing
> for Christopher Lewis, CDC number D as in David, 72491.
> Everyone has returned to the room that was here during the
> hearing.
>
> Mr. Lewis, this Panel has reviewed all the information received,
> and we've relied on the following circumstances in concluding that
> you are not suitable for parole and would pose an unreasonable risk
> of danger to society or a threat to public safety if released from
> prison.  I think you probably could gather by our discussion and
> questions of you that we have a lot of concerns.
>
> INMATE LEWIS:  Yes, Ma'am.
>
> PRESIDING COMMISSIONER SHELTON:  And I think you
> would do yourself a great, great, great disservice – not disservice, a
> great service to yourself if you would sit down and do some soul
> searching, and be able to present a true, factual, cohesive, right on,
> from the head, heart and gut synopsis of your commitment offense.
> We danced all over it today, and because of that it makes it
> difficult for us to believe in anything else that you say to us,
> because we don't believe you're telling the truth to us about the
> commitment offense.
>
> INMATE LEWIS:  Yes, ma'am.
>
> PRESIDING COMMISSIONER SHELTON:  We believe what
> you're saying is with regards to make you look better.  I'd rather
> know the truth, and know who and what we're dealing with, and
> have you know who and what you're dealing with.  Because you're
> doing a lot of things that you're supposed to be doing.

1   But we have two grave questions here.  One is your culpability in
    the commitment offense, the second is your actual substance abuse
2   or use or sales.  Since you're mitigated – do you understand what
    the word mitigate means?  Mitigation means to make look better or
3   make lighter of.  You mitigated your behavior in the commitment
    offense.  We feel you're doing the same with the rest of your
4   behaviors, such as substance abuse or drug abuse.  Does it make
    sense to you, what I'm saying?
5
    INMATE LEWIS:  Yes, ma'am.
6
    PRESIDING COMMISSIONER SHELTON:  We gave you a
7   three-year denial, Mr. Lewis.  We gave you a three-year denial
    because you've got some stuff to work on.  There was some
8   discussion on our parts about giving a longer denial, but we wanted
    to give you credit for the things that you've been doing well.
9
    But lying to the Board is not a good thing, and you did, you lied to
10  us today.  You specifically lied about Greg Williams.  That really
    bothered me, because some people accuse me of being more social
11  work-y than anything else, but I do believe in people.  So because
    you weren't truthful with us, it does not lend to a lot of credibility
12  with the rest of your statements.

13  INMATE LEWIS:  Yes, Ma'am.

14  PRESIDING COMMISSIONER SHELTON:  We're going to give
    you some ideas of how you might rectify that in the future, though.
15  I think Commissioner also has a few things to say, that you put
    eloquently to me during recess, but I'm going to go through this.
16  You know, Mr. Lewis, this commitment offense is, the offense is
    always going to be the same, sir.  But your portrayal of it is a tad
17  bit different than what the facts show.

18  We believe that you truly wanted to participate in this.  We believe
    that Mr. Williams was with you.  And you got involved in some
19  gang activity because you were involved in gang activity with the
    Neighborhood Crips.  You went back, you got a gun, and you went
20  back to play with the big boys.  We believe you when you said you
    shot into a group of on-comers.  But what a mean, horrifying,
21  awful thing to do.

22  You didn't know who you were shooting at.  You just shot, eight
    rounds.  You are lucky that you did not kill eight different people.
23  But yet, there's a 15 year old boy, may or may not have been
    involved in the gangs, but now he's not going to be given the
24  chance of growing out of it like you allegedly have.

25  The Statement of Facts comes from the January 10th 2000 Board
    report.  You downplay this commitment offense terribly.  I think
26  you need to take a real sincere soul-searching look.  The offense

                                      12

1   was carried out in a cruel manner.  Multiple victims were attacked.
    One was killed, like I said, a 15 year old boy.
2

3   The offense was carried, basically, I won't say dispassionately
    because I think you're very passionate about this, but I think it was
    somewhat similar to an execution style murder, because you had a
4   choice.  You didn't have to leave, go get the gun, and come back.
    That was the lifestyle.
5

6   If you're just told that, that would have been better for us to
    understand, than try to make it look like you accidentally happened
    on this situation.  Especially when it comes to your comments
7   about other shots being fired.  There's no incident [sic] or evidence
    of that anywhere.
8

9   This offense was carried out in a manner which demonstrated
    exceptionally callous disregard for human suffering, and the only
    motivation with regards to this has to do with because it was gang
10  activity.

11  With regards to your prior record, you were involved in an
    attempted robbery as a juvenile, and three different counts, at least,
12  of possession of controlled substance for sale.  We talk about a
    record of violence or assaultive behavior, and any time that there's
13  a robbery, even if it's attempted, that's person to person.  We look
    at that as being violent behavior.
14

15  You have an escalating pattern of criminal conduct.  You've been
    on probation, in fact, as I recall you were on probation from 1985
    with a three year term, 1986 with a three year term, and 1986
16  again, five months later, with a three year term.

17  What goes back here, again, and what we struggle with is just
    exactly what your drug involvement was.  We have two
18  psychiatrists that say that you abused drugs and that you were
    diagnosed with an Axis I Polysubstance Dependence.  And then we
19  have you saying that you only sold the drugs.

20  INMATE LEWIS:  I admitted that I –

21  PRESIDING COMMISSIONER SHELTON:  This is different than
    experimentation.  We went through that already.  We went
22  specifically through definitions of experimentation, use, and abuse.

23  Because we're giving you a three year denial, we're also giving
    you a new psychological evaluation, and we kept it out here to
24  specifically tell you what we want them to address.  We said
    there's a great deal of ambiguity about your past use or abuse of
25  substances, as well as the facts of the crime in this case.

26  /////

13

We also are looking at specifically having your violence potential in the community assessed, not like the doctor did here where he assessed in prison. So hopefully, that will provide you one, with an opportunity to be truthful with the psychiatrist, and two, an opportunity to have a better than what we got analysis of your dangerousness to the community.

The problem is you really need to be truthful to yourself first before you can be truthful to anybody else. Nobody wants to admit that they killed at 15 year old boy by their own hand. It's time you did.

INMATE LEWIS:  I admit it.

PRESIDING COMMISSIONER SHELTON:  There's a difference between saying, I did it, and owning it. Remember that, actions speaks louder than words, saying?

With regards to your institutional behavior, you have a classification score of 19. You received eight 115s, two of them in the year 2000. We did not go into those, and that was my question, which I finally remembered. I was going to ask you to describe those, but we're beyond that right now. Ten 128s, the last one in June of '93.

You know, your programming is not too bad. I have some suggestions for that shortly, and I will put your positive programming on the record shortly. You received a GED in 2001, and you are commended for that. But you appear to me to be in a position where you might want to do some additional education for yourself. Some classes, they have, what's the word I'm looking for, sending out? What's that college you talked –

DEPUTY DISTRICT ATTORNEY DAHLE;  Correspondence?

PRESIDING COMMISSIONER SHELTON:  Correspondence, exactly, correspondence courses.

DEPUTY COMMISSION SELLWOOD:  Coastline Community College.

PRESIDING COMMISSIONER SHELTON:  Coastline Community College. Take some things to expand your ability to take care of yourself. You did do a vocation. I'll get to that here shortly. We would like to see, like I said, more academics, more self-help.

Psychiatric evaluation done by Dr. Rouse in January of 2007, again, gave you a diagnosis of Axis I Polysubstance Dependence in institutional remission, and an Axis II Personality Disorder not otherwise diagnosed. A GAF score or 90, which is good. GAF

14

means Global Assessment of Functioning, kind of like how you would behave in a community. Ninety is a good score, because the highest is a hundred. But I'm just not convinced that's exactly where you're at, yet, but hopefully, you'll get there.

We talked about parole plans. We believe you probably didn't know what the State certification rules were. I do believe your sister did, so I'm concerned about that. But I was not sure if there were any new laws in place, and that's one of my partner's professional traits of knowing some of those things. I was in a different field, so I relied on him, and he's right.

So you're going to have to deal with one of two things. Your sister is going to have to give up her income, which probably won't happen, or you're going to have to find a new place to live. So you need to work on that.

Also, we had the discussion about the difficulty you'll have with transportation when it comes to employment. It's a good job offer. Now, maybe you can find a place closer to the job offer. I don't think you want to spend six hours driving round trip every day, especially at traffic times, especially since you don't have a driver's license or a vehicle.

And I don't know LA at all, so these two gentlemen can correct me, but there probably is public transportation, which probably would take twice as long as using a car, I don't know. Those are issues you need to take a look at. Your job is to put yourself in a position to be the most successful person you can.

I mentioned the 3042 notices to agencies, that's why the DA's Office is here from LA, and they're in opposition to your parole at the present time.

Mr. Lewis, you've been doing some good things. You got your GED in 2001, and as Commissioner Sellwood said, we commend you, because that's a long way back from where you were. You worked hard to get that. You have a vocation in janitorial. You've got auto body shop experience. You have experience at a previous prison under Adult Basic Ed One as an aide clerk. You are currently unassigned.

You've been involved continuously in AA and NA for a number of years. And you have participated in the life prisoner's support group, Breaking Barriers, and several other projects, years gone by, that are already documented on your record.

In a separate decision, the Hearing Panel finds that Mr. Lewis has been convicted of murder and it is not reasonable to expect that parole would be granted at a hearing during the next three years. Number one is the commitment offense. We've discussed it, you

15

1    need to discuss it in, like I said, your head, your heart and your gut.

2    You know, you need to read through this transcript.  Pay attention
     to all the questions that you got.  You need to quit making it be an
3    accident, because it wasn't.  You need to shore up your parole
     plans, we talked to you about that.  Self-help, I put down programs.
4    Are you familiar with the VORG program here?

5    INMATE LEWIS:  Yes, Ma'am.

6    PRESIDING COMMISSIONER SHELTON:  Have you ever
     considered participating in it?
7
     INMATE LEWIS:  It's a long waiting list.  I'm on the list.
8
     PRESIDING COMMISSIONER SHELTON:  Okay.
9
     INMATE LEWIS:  I'm on every available –
10
     PRESIDING COMMISSIONER SHELTON:  Get on the list, and I
11   am aware that it's a long list.  I just know that it's considered
     probably the best program this institution has to offer.  I would take
12   anything in the arena of self-help that offers you dealing with
     insight, how you look inside yourself, personal responsibility,
13   personal accountability, stress, relationships.  If you can't find
     programs that fit what you think you need to get help, read books.
14
     I was going to mention and forgot that you like to read black
15   history books.  Right now, it's a major topic on TV, racism.  Read
     some books that help you get in touch with who you are, and some
16   of that may, but I'm talking about ones that don't necessarily
     matter what color you are, we all have to deal with the same inside
17   parts of us.  Do you understand what I'm saying there?

18   INMATE LEWIS:  Yes, Ma'am.

19   PRESIDING COMMISSIONER SHELTON:  Like psychology
     type stuff.  I think that I have covered, other than the fact that we
20   are going to get you a new psychological evaluation as well.
     Commissioner.
21
     DEPUTY COMMISSIONER SELLWOOD:  Sir, you will receive
22   a transcript of this hearing.  Had you read carefully the transcript of
     the last hearing, it occurs to me that you may have been more intent
23   on the presentation of facts regarding the life crime.  The last Panel
     questioned the facts of the life crime as presented.  This is the
24   second Panel, so pay attention to it.

25   The Commissioner has very well stated our areas of concern.  To
     hopefully help you get the point about what we're saying I'd like to
26   say it just a little bit differently.  This Panel is required to

                                    16

determine whether or not you are an unreasonable risk should you be paroled to the community  public safety.

In order, in the short period of time that I have with you, which you know is very short, a couple of hours, and reading some information, I have to determine whether or not you are telling the truth, and whether or not you have put in place legitimate, honest components of your life that you can rely upon to not pose a threat to public safety.  I believe that you failed in both of those today.

I still have questions about the facts of the case.  The last Panel did, this Panel did.  The Commissioner has given you some information about how to consider that.  Please read that and consider it.  Once you cause me to question your truthfulness, I look with that coloration at all the things you say, and that's not good for you at a parole hearing.

And you have not put in place what I consider to be legitimate plans for living and working.  There's no way you can work that job where you're talking about in West LA from Palmdale.  It isn't going to happen.  And there's no way you can live with your sister and she can continue to be a foster parent.  Can't happen.

So I've got a question of truth and not good legitimate plans.  So my two foundations that I look at are not fulfilled.  So I hope, sir, that that will help you evaluate how you need to come to this Board and what you need to speak to us about.  Thank you, Commissioner.

(Pet. at 150-62.)

       D.  <u>Discussion</u>

       After taking into consideration the applicable legal standards discussed herein, and for the reasons set forth below, this court concludes that petitioner is not entitled to federal habeas relief with respect to his due process challenge to the Board's 2007 decision denying him parole.  The Board's decision that petitioner was unsuitable for parole at that time and that his release would unreasonably endanger public safety was supported by "some evidence" that bore "indicia of reliability."  <u>Jancsek</u>, 833 F.2d at 1390.

       One of the factors relied on by the Board to find petitioner unsuitable for parole in 2007 was the unchanging circumstances of his crime of conviction.  According to the decisions discussed above, the commitment offense can constitute "some evidence" to support the Board's

1   unsuitability finding only as long as it is still relevant to a determination of the prisoner's current

2   dangerousness.  Specifically, "the circumstances of a commitment offense cannot constitute

3   evidentiary support for the denial of parole 'unless the record also establishes that something in

4   the prisoner's pre-or post-incarceration history, or his or her current demeanor and mental state,

5   indicates that the implications regarding the prisoner's dangerousness that derive from his or her

6   commission of the commitment offense remain probative to the statutory determination of a

7   continuing threat to public safety.'"  Cooke, 606 F.3d at 1216 (citing Lawrence, 44 Cal.4th at

8   1214).  In this case, petitioner's prior criminal history, his post-incarceration history, his

9   demeanor at his suitability hearing, and his impractical, unsuitable parole plans, all support the

10  Board's 2007 finding that his commitment offense remained probative of his then-current

11  dangerousness.

12          In finding petitioner unsuitable for parole, the Board members relied on their

13  perception that petitioner was not being truthful in describing his role in, and motivation for, the

14  crime of commitment.  The commissioners concluded that petitioner had attempted to minimize

15  his actions and his drug abuse, and that he "lied" about the participation of another gang member

16  in the crime.  (Pet. at 152.)  The Board also relied on petitioner's pre-commitment criminal

17  history; his numerous disciplinary convictions suffered while in prison, which included a

18  conviction in January of 2000 for attempted extortion and a conviction in July of 2000 for mutual

19  combat; and his unsuitable and impractical parole plans.  These pre and post-conviction factors

20  support the Board's 2007 finding that the circumstances of petitioner's commitment offense

21  remained probative of his current dangerousness at that time, notwithstanding the positive strides

22  petitioner had made while incarcerated.[4]

23  _____

24      [4] Petitioner notes that his most recent psychiatric report indicated that his risk of violence
    was "low for this institutional environment."  (Pet. at 29.)  However, the Board concluded that a
25  new report was needed to assess petitioner's risk of dangerousness outside the institution.  In this
    regard, because the psychiatrist's conclusion in the most recent report was limited to the risk of
26  violence posed by petitioner in the institutional environment, the report was deemed to be an
    unreliable indicator of petitioner's current dangerousness if released from custody.

The Los Angeles County Superior Court rejected petitioner's due process challenge to the Board's 2007 decision, reasoning as follows:

> The Court has read and considered the Petition for Writ of Habeas Corpus filed on November 30, 2007 by the Petitioner. Having independently reviewed the record, giving deference to the broad discretion of the Board of Parole Hearings ("Board") in parole matters, the Court concludes that the record contains "some evidence" to support the Board's finding that the Petitioner presents an unreasonable risk of danger to society and is unsuitable for parole. Cal. Code Reg. Tit. 15, § 2402; In re Rosenkrantz (2002) 29 Cal.4th 616, 667.
>
> The Petitioner was received in the Department of Corrections on December 4, 1987 after a conviction for second degree murder with use of a firearm. The term was seventeen years to life in prison. His minimum parole eligibility date was March 5, 1999.
>
> The record reflects that on November 14, 1986, the Petitioner was involved with the Neighborhood Crips gang. He was at a bus stop when a rival gang became engaged in a brawl with members of the Crips. The Petitioner ran to obtain a handgun and then returned with it to confront the rival gang members. When a number of rival gang members crossed the street and headed towards his direction, he shot his handgun eight times. One of the shots hit 15 year old Alvin Timmons in the chest, killing him.
>
> The Board found the Petitioner unsuitable for parole after a parole consideration hearing held on April 11, 2007. The Petitioner was denied parole for three years. The Board concluded that the Petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if he is released. The Board based its decision primarily on the commitment offense, his previous criminal record, and his institutional behavior.
>
> The Court finds that there is some evidence to support the Board's finding that the commitment offense was carried out in a dispassionate and calculated manner. Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(B). The Petitioner saw that several persons were fighting and ran to a different location to get a handgun. He returned to the scene of the violence and shot eight times at a group of gang members who were crossing the street and heading in his direction. Multiple victims were attacked, injured, or killed in the same or separate incidents. Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(A). Only one person was shot and killed, but the eight shots were directed at several persons at the time of the offense.
>
> In addition, the Court finds that the Petitioner had a previous criminal record which included attempted robbery as a juvenile and

1    several adult convictions involving possession of drugs, including
     possession for sale.  Cal.  Code Regs., tit.  15, § 2402, subd. (c)(2).
2    The Court also finds that there is some evidence to support the
     Board's finding that the Petitioner had eight 115s, including for
3    mutual combat and for attempted extortion resulting in the use of
     physical force, while in prison.  Cal.  Code Regs., tit.  15, §2402,
4    subd. (c)(6).

5    In addition, the Board noted that the District Attorney's Office had
     opposed the Petitioner's release.  While this is also not a factor on
6    which the Board may rely to deny parole, such opposition may be
     properly considered.  Penal Code § 3402.
7
     The Board also noted several positive gains that the Petitioner has
8    achieved while incarcerated.  However, it concluded that despite
     these gains, the Petitioner posed an unreasonable threat to public
9    safety at the time of its hearing.  Penal Code § 3041(b).

10   Finally, the Court finds that the Board did not err in denying the
     Petitioner parole for a period of three years.  The reasons were
11   specified in the Board's decision, and essentially repeated the
     rationale for denying parole.  The reasons need not be completely
12   different from those justifying the denial of parole, and sufficient
     basis for the three-year denial did appear in the record as a whole.
13   See In re Jackson, (1985) 39 Cal.3d 464, 479.

14        Accordingly, the petition is denied.

15   (Answer, Ex. 1 at 182-83.)

16        The Los Angeles County Superior Court's decision that petitioner's right to due

17   process was not violated by the Board's 2007 decision finding him unsuitable for parole in light

18   of the evidence and factors outlined above, is not contrary to or an unreasonable application of

19   federal law as set forth herein.  Petitioner is therefore not entitled to federal habeas relief.

20                              CONCLUSION

21        Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

22   a writ of habeas corpus be denied.

23        These findings and recommendations are submitted to the United States District

24   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

25   one days after being served with these findings and recommendations, any party may file written

26   objections with the court and serve a copy on all parties.  Such a document should be captioned

                                        20

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant); Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of appealability to review the denial of a habeas petition challenging an administrative decision such as the denial of parole by the parole board).

DATED: December 29, 2010.

_Dale A. Drozd_
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
lewis473.hc

21